## DISTRICT OF MINNESOTA

Minnie Holmes,                                         Case No.

          Plaintiff,

                                        **Complaint**

   v.

                                        *Jury Trial Demanded*

Delta Air Lines, Inc.,                                 *Under Fed. R. Civ. P. 38*

          Defendant.

For her Complaint against Defendant, Plaintiff Minnie Holmes hereby states and alleges upon knowledge, information, and belief as follows:

### Jurisdiction & Venue

1. This action involves a violation of Federal Aviation Administration (FAA) regulation 14 C.F.R. § 121.575(b)(1), which confers original subject matter jurisdiction upon this Court.

2. Since original jurisdiction exists, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

3. Alternatively, this Court also has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

4. Plaintiff Minnie Holmes was and is a citizen of the State of Minnesota.

5. Delta Air Lines, Inc. is a Delaware corporation with its principal place of business in Atlanta, Georgia.

6. Delta is a citizen of Delaware and Georgia.

7.    Delta does business in Minnesota and did so at all relevant times.

8.    Delta maintains continuous and systemic contacts with the State of Minnesota through the business it conducts in Minnesota, including its operation of daily flights from and to Minnesota.

9.    Delta has a registered office address in Minnesota at 2780 Snelling Avenue North, Suite 101, Roseville, MN 55113.

10.    There is complete diversity of citizenship between Holmes and Delta.

11.    More than $75,000.00 is in controversy.

12.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), (c).

## Factual Background

**A.    After Delta employees overserved a passenger, he assaulted Holmes.**

13.    Holmes is in her early 70s, a mother, and recently retired.  She also recently lost her son, Steven.

14.    To help Holmes through such a difficult time, Holmes' daughter planned a trip to San Juan, Puerto Rico.

15.    On October 6, 2024, Holmes and her daughter were returning home from San Juan, Puerto Rico on Delta flight number DL 1946.

16.    While the two waited for the plane to depart, they talked about their fun and memorable time in Puerto Rico.

17.    After grieving the loss of her son for months, Holmes had found some joy during this trip.

18.     After departing and reaching altitude, Delta employees began the drink service.

19.     The two passengers in the row ahead of Holmes and her daughter began ordering alcoholic beverages.

20.     The two passengers quickly became obviously intoxicated.

21.     Delta employees continued to provide them with alcohol.

22.     The two passengers became boisterous, swearing and causing a scene.

23.     The female passenger directly in front of Holmes reclined her seat, leaving Holmes with little room to move or utilize her seat tray.

24.     Holmes' daughter politely asked the woman if she could move her seat up just a little so Holmes could have enough room to be comfortable.

25.     The female passenger became angry and responded that she would not move her seat out of the reclined position.

26.     After hearing the female passenger's loud retort, a Delta employee came to address the situation.

27.     That Delta employee stated that the female passenger could recline her seat and left.

28.     The Delta employee knew or should have known that the two passengers were intoxicated based on her interaction and observation of them.

29.     The Delta employee then returned and provided the two passengers with more alcohol, despite their obvious intoxication.

3

30.     The two passengers became more and more intoxicated.  This was obvious from their loud swearing, talking, and laughing.

31.     The two passengers turned their attention to Holmes, seemingly amused by her discomfort.

32.     They repeatedly gestured toward Holmes, laughing loudly.

33.     The male passenger then stood up and yelled, "No one better fuck with [the female passenger]."

34.     Despite these passengers' clear intoxication, repeated outbursts, and inappropriate behavior, Delta employees continued to serve them alcohol.

35.     Delta continued serving these passengers, despite knowing that these passengers were obviously intoxicated, disruptive, and a foreseeable danger to other passengers on the flight.

36.     Delta employees knew, or should have known, that the passengers posed a threat to those around them given their outbursts and overall intoxication.

37.     Despite this, the passengers continued to be served, and continued to become more intoxicated, disruptive, and aggressive.

38.     After the flight attendants were told to start preparing the cabin for landing, Holmes' daughter assisted Holmes to get something from her bag.

39.     The male passenger reached behind his seat and forcefully punched Holmes in the chest.

40.     The man's attack was surprising, and Holmes was in shock.

41.     The man's attack caused substantial physical pain to Holmes.

42.    Alarmed, Holmes' daughter raised concern, asking the man why he had punched Holmes.

43.    A Delta employee came over and yelled at Holmes and her daughter, stating, "You guys need to figure this out."

44.    The Delta employee knew that the male passenger had just physically assaulted Holmes.

45.    Initially, the employee instructed the two passengers to remain in their seats, despite Holmes and her daughter's obvious distress.

46.    Knowing that Holmes had been assaulted, the Delta employee did nothing to protect Holmes from the possibility of another attack.

47.    After approximately thirty minutes and intervention from four Delta employees, the two passengers were moved to different seats.

48.    After landing, Holmes, her daughter, and the two passengers were escorted off the plane.

49.    Law enforcement officers were waiting at the gate.

50.    Holmes and her daughter explained how the assault occurred.

51.    The following day, Holmes was examined by medical professionals due to chest pain she was experiencing as a result of the assault.

52.    Because of Delta's negligence in overserving alcohol to the passengers, Holmes was physically and emotionally harmed.

53.    Holmes is unable to look at the photos from the trip because it causes her great distress to think about being assaulted by the intoxicated passenger.

**B.    Delta employees overserve passengers regularly leading to foreseeable assaults.**

54.    On July 26, 2022, a mother and her teenage daughter were assaulted on a Delta flight from New York to Greece by a passenger who was overserved on that Delta flight.  *See A.A. v. Delta Air Lines, Inc.*, No. 23-cv-5591 (E.D.N.Y., filed July 25, 2023).  The Complaint from *A.A. v. Delta Air Lines* is attached as Exhibit A.

55.    On June 16, 2018, Delany Luh was assaulted by an intoxicated and overserved passenger on a Delta flight from Chicago to Los Angeles, with a stop in Minneapolis.  *See Luh v. Delta Air Lines*, No. 3-18-cv-406 (E.D. Tenn., filed Sept. 24, 2018).  The Complaint from *Luh v. Delta Air Lines* is attached as Exhibit B.

56.    On July 15, 2016, a woman was assaulted on a Delta flight from Detroit to Myrtle Beach.  *See Costigan v. Delta Air Lines, Inc.*, No. 2:17-cv-11903 (E.D. Mich., filed June 15, 2017).  The Complaint from *Costigan v. Delta Air Lines* is attached as Exhibit C.

57.    On July 16, 2023, an intoxicated passenger who was traveling and served on a Delta flight from Georgia to Washington assaulted another passenger.  *See USA v. Roberson*, No. MJ23-358 (W.D. Wash., filed July 17, 2023).  The criminal Complaint for Violation in *USA v. Roberson* is attached as Exhibit D.

<u>**Count One**</u>
**Violation of 14 C.F.R. § 121.575(b)(1)**

58.    Plaintiff realleges all allegations of this Complaint as if fully stated herein.

59.    "No certificate holder may serve any alcoholic beverage to any person aboard any of its aircraft who— (1) Appears to be intoxicated."

60.    Delta employees continued to serve the passengers with alcoholic beverages despite the fact that Delta employees knew or should have known that they were obviously intoxicated.

61.    Delta is vicariously liable for the conduct of its employees.

62.    As a direct and proximate result of Delta's negligence, Plaintiff incurred and will incur medical bills, emotional distress, embarrassment, and pain and suffering.

63.    Delta's conduct warrants an award of punitive damages.

**Count Two**
**Negligence - Common Carrier Liability**

64.    Plaintiff realleges all allegations of this Complaint as if fully stated herein.

65.    Delta is a common carrier.

66.    As a common carrier, Delta owed Plaintiff the highest duty of care to protect Plaintiff from foreseeable dangers.

67.    Delta breached that duty, through its employees for whom it is vicariously liable, as described herein.

68.    As a direct and proximate result of Delta's negligence, Plaintiff incurred and will incur medical bills, emotional distress, embarrassment, and pain and suffering.

69.    Delta's conduct warrants an award of punitive damages.

**Count Three**
**Negligence**

70.    Plaintiff realleges all allegations of this Complaint as if fully stated herein.

71.    Delta had a duty to act reasonably.

72.    Delta breached their duty by the conduct described herein.

73.    Delta is vicariously liable for the conduct of its employees as described herein.

74.    Delta is also directly negligent for, among other things, its failure to reasonably train and supervise its employees.

75.    As a direct and proximate result of Delta's negligence, Plaintiff incurred and will incur medical bills, emotional distress, embarrassment, and pain and suffering.

76.    Delta's conduct warrants an award of punitive damages.

**Plaintiff Minnie Holmes hereby demands a trial by jury.**

WHEREFORE, Plaintiff Minnie Holmes prays for judgment as follows:

1.    As to Count One, a money award for compensatory and special damages in excess of $75,000.00 in addition to pre- and post-judgment interest, costs, disbursements, punitive damages, and all other relief the Court deems just and equitable.

2.    As to Count Two, a money award for compensatory and special damages in excess of $75,000.00 in addition to pre- and post-judgment interest, costs, disbursements, punitive damages, and all other relief the Court deems just and equitable.

3.    As to Count Three, a money award for compensatory and special damages in excess of $75,000.00 in addition to pre- and post-judgment interest, costs, disbursements, punitive damages, and all other relief the Court deems just and equitable.

**STORMS DWORAK LLC**

Dated: June 3, 2025                    /s/ Naomi E. H. Martin
                                       Jeffrey S. Storms, #387240
                                       Naomi E. H. Martin, #0402332

222 South 9th Street, Suite 470
Minneapolis, MN 55402
Phone: 612.455.7055
Fax: 612.455.7051
naomi@stormsdworak.com
jeff@stormsdworak.com

*Attorneys for Plaintiff*